BATES *v.* FRANSON.

1. WITNESSES — INTEREST — COMPETENCY — CREDIBILITY — QUESTIONS FOR JURY.

Interest of witnesses and their alleged previous contradictory statements and ability of opposing party's witnesses to observe how such party drove his car are matters affecting credibility of the respective witnesses, hence, are questions for consideration by the jury.

2. AUTOMOBILES—PHYSICAL FACTS—GREAT WEIGHT OF EVIDENCE.

Physical facts after head-on collision of automobiles, especially when disagreement of witnesses adds to the confusion on question of just what occurred immediately prior to and during the impact, *held*, insufficient to render verdict against the great weight of the evidence, notwithstanding Supreme Court might have come to different conclusion were it the trier of the facts.

3. APPEAL AND ERROR—TRIAL—REMARKS OF COUNSEL.

As to remarks on subject of defendant's failure to render assistance to plaintiff, injured in head-on collision between their cars, statement of remarks as reported in record of trial of case and upon which trial court ruled is used as basis for decision on their prejudicial character rather than a different statement contained in record of proceedings on motion for new trial and disputed by plaintiff.

4. TRIAL—REMARKS OF COUNSEL.

In automobile collision case, remarks of counsel relative to defendant's leaving scene of accident without rendering assistance to plaintiff who had suffered severe personal injuries, *held*, not reversible error in view of court's admonition to jury to not be moved by sympathy but be guided entirely by evidence.

5. DAMAGES—EXCESSIVE VERDICT—PERSONAL INJURIES.

Verdict of $9,595 for plaintiff in automobile accident case *held*, not excessive, where injuries consisted of skull fracture, severe arm injury, permanent impairment of hearing in one ear, continued headaches and dizziness.

Appeal from Dickinson; Bell (Frank A.), J. Submitted April 9, 1936. (Docket No. 51, Calendar No. 38,834.) Decided June 11, 1936.

Case by Gilbert Bates against Joseph W. Franson for personal injuries sustained in a head-on collision between automobiles. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*C. D. Dwyer* (*E. J. Dundon,* of counsel), for plaintiff.

*MacAllister & Brown,* for defendant.

BUTZEL, J. On June 30, 1935, at about 1:30 a. m. a 1929 Oldsmobile coach while driven by plaintiff, its owner, in a northerly direction, collided with a 1934 Ford sedan, while driven by defendant, its owner, in a southerly direction. The collision occurred about a mile south of Channing, Michigan, on M-95, a State trunk highway whose hard packed gravel road is about 25 feet in width and without a demarcation line in the center. The night was clear and there were no obstructions on the road. The cars collided about 200 feet south of the apex of a slight slope or hill from which the road curves to the left in a southerly course. The curve is described as long and sweeping so that the momentum of a car going south would have a tendency to swerve it to the west or right side of the road, while a car going north would not be so affected. Plaintiff suffered severe injuries and recovered a judgment on verdict of $9,595 against defendant.

Defendant claims that the verdict was against the great weight of the testimony. Plaintiff's car was being driven at the rate of 35 to 40 miles per hour,

defendant's at less than 40 miles per hour. Plaintiff asserts that he was traveling on his right or easterly side of the road and that he drove to the very extreme right when defendant's car bore down on him. Defendant, with equal positiveness, testified to the contrary, claiming that he drove on his right side or westerly side of the road and that the collision occurred through plaintiff's driving left of the center of the road instead of remaining on the right side. Plaintiff's two passengers corroborated his testimony, while defendant's three passengers upheld his version of the accident. Defendant contends that the testimony of plaintiff's two passengers should be discredited because they were interested in the outcome of the litigation because of claims for injuries sustained in the same collision. The record does not show that they asserted such claims. Their interest as well as a contradictory statement alleged to have been previously made by one of plaintiff's witnesses and also plaintiff's claim that two of the passengers of defendant's car were seated in the rear seat and would not have noticed how defendant was driving are all fair arguments to the jury who must judge the credibility of witnesses. If there is sufficient testimony to sustain the verdict, we may not disturb it. Defendant, however, contends that the physical facts after the accident show that he was on the right side of the road. He calls attention to testimony in regard to a rut on the west side of the road, allegedly caused by plaintiff's car, but admits that oil and broken glass from plaintiff's car were found on the east of plaintiff's side of the road. After the accident, the Oldsmobile stopped on the right side of the road facing in a northwesterly direction at about a 45-degree angle across the highway with its rear wheels on the right edge of the highway going north,

while the Ford V-8 was on its right side of the high-
way, facing south, close to the right or west edge of
the highway. Plaintiff's witnesses claim that the
distance between the two cars after the collision was
25 feet, while some of defendant's witnesses esti-
mated the distance to be from 50 to 60 feet. Wit-
nesses for plaintiff stated they saw no such rut and
others that they found none after searching for one.
They all agree that both cars after the accident were
incapacitated. Unfortunately, physical science does
not furnish us with any satisfactory rules by which
we may deduce with any certainty from physical
facts after the collision just what occurred imme-
diately prior to and during the impact. There are
too many variables that must be considered, the age
and condition of the cars, their horse-power, the rate
at which they were being driven, the condition of the
road, the way they were being steered at the time of
and immediately after the impact, the distance and
direction cars will move after colliding, etc. See
*Harding* v. *Blankenship,* 274 Mich. 118. The present
case is a good example of the unreliability of testi-
mony of this nature, the disagreement of witnesses
adding to the confusion. While it is possible, were
we jurymen in the case, that we would have come to
a different conclusion, we cannot say that the verdict
was against the great weight of the testimony.

The record showed that immediately after the acci-
dent when plaintiff was lying unconscious in the
roadway, defendant, instead of trying to give per-
sonal assistance, drove at once to the neighboring
village of Channing to summon medical aid for the
injured persons. The arguments of counsel were not
reported, but the following colloquy took place im-
mediately after the close of the arguments:

"*Mr. MacAllister:*  Your honor, Mr. Dwyer, attorney for the plaintiff in this action has argued to the jury that the defendant in this case did not make any effort to render any assistance to the injured plaintiff or the guest passenger in his car, nor did any member of the Franson party offer to render any assistance, where as the record shows, that the defendant, Franson, and the witness, Erickson, left almost immediately after the collision for Channing to secure medical assistance for the injured persons.

"*Mr. Dwyer:*  I think it is unfair, and is a sloppy statement, and I didn't say that, and I can repeat just what I said.

"*The Court:*  I shall instruct the jury to be guided entirely by the evidence in this case, and I do not want the jury to be moved by sympathy, and I do now so instruct the jury to that effect."

In the motion for new trial, attorney for defendant elaborates on what was said and in an affidavit charges plaintiff's counsel with stating to the jury that while plaintiff and his companions lay unconscious and helpless, not one member of defendant's party did anything to ease their suffering or give them any assistance and that not "one of them attempted to render those helpless boys any assistance. There they lay in that road under the stars of that summer night and while the bells of death might have tolled at any moment, the members of Franson's party stood afar, cold, distant and aloft." Plaintiff's counsel, on the other hand, in an affidavit filed in opposition to the motion for a new trial denied that he made the remarks in the form alleged. We are relegated to the record to which the court referred in denying the motion for a new trial. We accept appellant's version of the remarks as appear in the record of the trial and as called then and there to the attention of the judge, who took the opportu-

nity to admonish the jury to be guided entirely by the evidence and not to be moved by sympathy. A different statement of the remarks cannot be considered when they appear not in the record of the trial, but in the motion for a new trial and are disputed by appellee. *Pinkerton Bros. Co.* v. *Bromley,* 128 Mich. 236.

Defendant claims that the damages awarded were excessive, that of the $9,595 awarded, $8,700 was for past, present and future pain, suffering and disability. The record supports the court's finding, in his denial of the motion for a new trial, that there was evidence of a skull fracture causing unconsciousness for 10 days, followed by headaches which had persisted up to the time of the trial and which might continue indefinitely into the future; an enlarged elbow with 15 per cent. loss of flexibility and an injured forearm which had lost practically all power of rotation. There was also evidence of inability to work at the time of the trial and partial disability that would be permanent; that plaintiff's hearing in one ear had been permanently affected; that at the time of the trial he had headaches and dizziness which might clear up in time. The court stated that while he might have rendered a judgment for a lesser amount, he did not find the verdict to be so grossly excessive as to replace the judgment of the jury with his own. Unless we find the amount of the judgment excessive, we decline to disturb it. This is such a case.

The judgment is affirmed, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.