ROWLAND v. BROWN.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — MOTOR VEHICLES — QUESTION FOR JURY.

In an action for personal injuries caused to plaintiff by being struck by defendant's automobile as she was attempting to cross the street, contradictory testimony as to defendant's negligence and plaintiff's contributory negligence, *held*, to present a case for the jury under proper instructions.

2. SAME—AUTOMOBILES ON WRONG SIDE OF STREET.

A pedestrian crossing a street is not guilty of contributory negligence by failing to continue to look, after passing the center of the street, for automobiles running on the wrong side, although an automobile is in sight, approaching on its right side, which the pedestrian had just crossed.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted June 10, 1926. (Docket No. 71.) Decided April 1, 1927.

Case by Margaret Rowland against William Brown for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Daskam & Fox*, for appellant.
*Harry H. Wait*, for appellee.

STEERE, J. This case was brought to recover damages for injuries received by the plaintiff when an automobile driven by defendant struck her. The accident happened on Cass avenue in the city of Detroit. At close of all the testimony defendant asked for a directed verdict, claiming no negligence had been shown on his part, and even if so plaintiff was shown guilty of contributory negligence. The court over-

[1]Motor Vehicles, 28 Cyc. p. 49; [2]Id., 28 Cyc. p. 49; 42 L. R. A. (N. S.) 1182; 14 A. L. R. 1185; 2 R. C. L. 1186; 1 R. C. L. Supp. 725; 4 R. C. L. Supp. 147; 6 R. C. L. Supp. 130.

ruled this motion.    In his charge to the jury the trial judge told them, among other statements:

"Now, the fact that a collision occurred between this plaintiff and the automobile and that an injury was incurred as a result thereof would not entitle the plaintiff to damages in this case, unless the jury should find that the accident was due to the negligence of the defendant; and before she can recover she must not only establish the fact that the accident was due to the negligence of the defendant, but that she herself was guilty of no negligence, and that the negligence of the defendant was the proximate cause of the injury.

"Now, by negligence is meant the doing or omitting to do a thing which an ordinarily prudent man would not have done or would not have omitted to do under like or similar circumstances.

"Contributory negligence is defined in a very similar way.    It is the doing or omitting to do an act which an ordinarily prudent person would not have done or would not have omitted to do under like circumstances, the result of which contributed to the injuries sustained.

"And, by proximate cause is meant, it must be the real cause, the actual cause, no cause intervening to assist in bringing the injury about.

"Now, if the jury should find in this case that the defendant was not operating his car in a prudent, careful and lawful manner at that time, and that he was guilty of negligence and that the plaintiff was not guilty of any negligence, then the defendant would be liable for the damages sustained in this case.    If, on the other hand, you should find that the plaintiff was guilty of negligence which contributed to the injury, then the plaintiff cannot recover."

The jury returned a verdict in favor of plaintiff in the sum of $750.    Later a judgment was entered for that amount.    A motion was then made for a judgment in favor of the defendant notwithstanding the verdict.    This motion was overruled.

The defendant has brought the case here by proper assignments of error.    The only question necessary

to decide is whether plaintiff was guilty of contributory negligence as a matter of law. To intelligently and understandingly dispose of this question it is deemed best to quote at some length from the testimony. Plaintiff testified in part:

"I left the house at 10 minutes to 11 to mail a letter going on the Chicago mail, 12 o'clock at night. Howard street runs east and west; Cass avenue runs north and south. The first street south of Howard street running the same way is Lafayette boulevard. I was about 40 feet north of the alley when I started to cross Cass avenue. There was no automobiles coming, and I thought it was a good chance to cross. The alley is between Lafayette and Howard running east and west. It is about the middle of the block between Howard and Lafayette. I then proceeded eastward across Cass. I had got almost across the street when I was hit by the automobile. There was one car—the traffic had stopped at Lafayette boulevard, and that was a car going north on Cass, and there was one just down at Michigan. I thought I had plenty of time to get across the street, and I would have had if he hadn't been going to turn out. I saw a car coming from Michigan a block and a half away. Michigan is north from where I was standing. I didn't know I was hit until the automobile struck me right here, and left a place here where the bumper struck me on my left leg. When I realized where I was, I was lying right in front of the wheels of the car. I was right up against the east curb. The automobile was going south on Cass avenue on the east side. * * * After I got into the house, I had a talk with Mr. Brown (defendant). He told me where his place of business was and where I would find him, and he said he tried to avoid the accident, but he was very lucky he had thrown his brakes in time not to run over the top of me. He said it was raining, and he couldn't see for the rain on the windshield. I told him if he had stayed on the west side of the street where he belonged I would not have got hit; I was looking for a car coming from the south. * * * On the following evening after the accident, he asked me where I was hurt and how badly I was hurt, * * * and he said he tried to stop the car as quick as he

could and I was lucky he didn't run over me, the car wheels right against me.

"*Q.* What if anything was said regarding his driving on the east side of Cass avenue going south?

"*A.* Well, he said he was going up into the parking ground. He didn't blow no whistle, and I don't really remember whether the lights were on or not, it took me by surprise so I didn't notice."

On cross-examination she testified:

"This happened about 11 o'clock at night, it had not been raining for an hour before that. It had been raining.

"*Q.* Were the streets wet?

"*A.* The streets had dried at the time of the accident because my clothes were not wet. I don't think it had rained for an hour before that because I wrote the letter after it stopped raining and started for the postoffice. * * * At the time I crossed there was one car stopped up at Lafayette waiting for traffic and there was another car coming down from Michigan avenue. I looked both ways before I started to cross. The car coming down from Michigan avenue was the only car there was on the street. Michigan avenue is a block north of Howard street. I looked before I left the curb. I looked both ways. * * * It was Mr. Brown's car that was a block and a half away when I looked. Mr. Brown's car was the one that hit me. That was the only car I could see on the street, Mr. Brown's car, a block and a half down. When I looked it was on the west side of Cass. I looked both ways and that was the only car coming on the street anywhere except one coming the other way from Lafayette, but it hadn't started; the traffic had stopped there. * * * I went across the street only looking down to the south to see if I could avoid the one coming from the south. I didn't look any more to the north to see what had become of Mr. Brown's car. I didn't see his car just before it struck me. I didn't see his car until I felt it strike me right here. * * * I didn't think of it coming over to the east side of the street because he was driving on the west side, south, and he should have kept on the west side of the street, unless he blowed his horn to turn up the alley. I had plenty of time to get across the

street if he had stayed on the west side of the street where he should, he wouldn't have struck me, because he told me he turned out there to turn up the alley to the parking ground.  *  *  *   I know that Cass avenue is a street on which there is heavy traffic as a rule.  *  *  *

"*Q.* Isn't it true that you didn't look to see whether Mr. Brown was coming at all and that his car struck you in the back?

"*A.* The car struck me right here on the leg; that is where it struck me.  *  *  *

"*Q.* Now, you thought you had plenty of time to get across the street before he got down to where you were?

"*A.* Yes, sir.

"*Q.* And you started across the street?

"*A.* Yes, sir.

"*Q.* You didn't look again to see where his car was?

"*A.* I was looking up the other way to see if that car was coming because I was more than half way across the street; it was the other car I was looking for, to come the other way.

"*Q.* Well, after you looked the first time you did not look again in that direction to see where Mr. Brown's car was?

"*A.* No, sir.  *  *  *

"*Q.* Well, if you had looked there would have been nothing that would have prevented you from seeing Mr. Brown's car coming?

"*A.* If he had stayed on the side of the street where he belonged he would not have hit me.

"*The Court:* No, witness; now, just answer the question.  *  *  *

"*A.* Well, I didn't look again because I had plenty of time to get over.

"*Q.* But if you had looked again you could have seen Mr. Brown's car coming, could you not?

"*A.* Probably could."

Defendant testified in part as follows:

"I recall an accident in which the plaintiff, Mrs. Rowland, and I figured in 1923, September.   At that time I had been driving a car about four years.   On the night of the accident I was driving a Ford roadster.   I was going down to Lafayette, to a little

restaurant, east on Lafayette.    It was between 11 and 11:30 at night.    The street is not well lighted along there.    I had the lights of my car lit.    I had come from some place up the street on Cass and was driving south.    *    *    *    It was clear so that I could see through my windshield.    I recall there were cars parked along the curb on the west side of Cass north of the alley between the alley and Howard.    It was parked solid, with the exception of maybe one or two spaces.    I was driving on the west side of the street at the time of the accident between five and about ten feet from the west curb.    I was going about ten miles an hour.    I was going south.    After the accident my car was about half a car length from the rear of the car to the back end of the alley.    Before the accident I saw Mrs. Rowland a matter of about two seconds, a distance of about four or five feet.    When I first saw her she was crossing the street, attempting to cross the street, and directly in front of me when I saw her. South of the alley, Cass avenue was parked solid.    I should judge I was about four or five feet from the line of cars.    Immediately I saw this lady in front of the car, I put on my brakes.    I had bumpers on the car.    I struck her on the side of the leg.    She was going across the street and my view was a side view, and it would be the side of the leg, the left leg.    When I struck her, she fell into a sitting position, and I got out of the car and tried to help her up.    *    *.    *

"*Q.* Do you know in what—what the color of the clothing was, Mrs. Rowland had on the night that you struck her?

"*A.* Mrs. Rowland was dressed on that night similar to her attire now; black dress and black hat.    I was driving very carefully and came down the street.    As I say I was going to a restaurant on Lafayette, east, above Cass, and I was on the west side of the street. It had been raining previously, and the pavement was still wet.    It happened so quickly I didn't have a chance to sound any warning.    All I had a chance to do was to put my brakes on.    I do not know from where Mrs. Rowland came."

There is a sharp conflict in the testimony.    Defendant claims he was on the west side of the street at

the time of the accident, where he belonged when going south, between five and ten feet from the west curb, and that he acted promptly when he saw the plaintiff, while she testified that she had passed the center of the street and was near the east curb when struck. Other contradictions in the testimony are shown by what we have quoted.

It is the further claim of defendant that, because on cross-examination plaintiff testified she probably could have seen defendant after she had crossed the center of the street if she had looked, she was guilty of contributory negligence as a matter of law; that contention being summarized in his counsel's brief as follows:

"The defendant claims error in this case by reason of the denial of his motion for a directed verdict and the subsequent renewal of this motion duly reserved in the form of a motion for judgment *non obstante veredicto* on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The testimony taken in its most favorable light to the plaintiff and on her own story establishes that she was guilty of contributory negligence. * * * The law does not require a driver to drive on any part of the street except when passing other vehicles. Comp. Laws Supp. 1922, § 4814; *Bacon* v. *McKay,* 227 Mich. 667, 671;" citing other authorities but stressing *Jones* v. *Armstrong,* 231 Mich. 637.

In the last-named case the automobile was driving on the side of the street where it had a right to be, and an examination of other cases cited will show they are distinguishable from the case we are considering in controlling essentials. We know of no authority holding it is contributory negligence as a matter of law if a pedestrian does not continue to look after passing the center of the street for automobiles running on the wrong side of the street, although an automobile is in sight approaching on its right side of the street which the pedestrian had just crossed.

The controlling question in the case was one of fact. It was fairly and properly submitted to the jury by the trial judge. *Bouma* v. *Dubois,* 169 Mich. 422; *Benjamin* v. *McGraw,* 208 Mich. 75; *Corey* v. *Hartel,* 216 Mich. 675; *Reynolds* v. *Knowles,* 223 Mich. 70; *Russell* v. *Twiss,* 224 Mich. 532; *Steele* v. *Stahelin,* 234 Mich. 307; *Mills* v. *Railway Co., ante,* 393.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.