27850. WRIGHT *et al. v.* BALES.

DECIDED FEBRUARY 22, 1940. REHEARING DENIED MARCH 23, 1940.

*Henderson & Spence, George F. Fielding,* for plaintiffs in error. *T. B. Higdon, E. H. Sheats,* contra.

MACINTYRE, J. Mrs. Christine Bales brought an action against W. T. Wright and Willie McClain to recover damages for the death of her husband which she charged was caused by the negligence of the defendants. The judgment was for the plaintiff and the defendants excepted to the overruling of their motion for new trial.

It appears from the evidence that a Ford truck was parked on the east side of Piedmont Road near the City of Atlanta at a place

immediately south of the intersection of Elliot Circle and Piedmont Road. Thirty-two feet south of the parked truck and on the opposite side of Piedmont Road, which is paved and is thirty-four feet wide, a Ford automobile was parked. The north end of the Ford automobile was thirty-two feet south of the south end of the Ford truck. The plaintiff's husband, who had been working in a yard on the east side of Piedmont Road, at the instruction of his foreman, who was in the Ford car parked on the west side of Piedmont Road, attempted to cross Piedmont Road in the following manner: the plaintiff's husband, according to the testimony of one witness, passed in front of the north end of the parked Ford truck, started diagonally across the street in a southwesterly direction toward the Ford car on the other side of the street, and was hit by the defendants' truck at a point on the left side of the center of Piedmont Road relatively to traffic going south.

Mrs. Mulkey, a witness for the defendants, testified that she was riding in the cab of a Chevrolet truck with McClain and Cagle. Further: "As to what happened to him [Bales, plaintiff's husband], I don't know how it happened." On cross-examination she testified: "I don't know whether Mr. Bales came out twelve feet into Piedmont before he was struck or not. There was not anything to keep Mr. McClain from seeing him. I testified that Mr. Bales came out slanting from the truck, like he was going to the other car that was parked on the other side down on Piedmont Road. . . When Mr. Bales was struck he was pretty near the middle of Piedmont Road. . . Mr. Bales was walking in a street [as he was walking] the traffic until you get to the middle of the street is coming on your left. Mr. Bales was looking to his left. I saw him come from behind the truck and he went about twelve feet before he was struck." The defendant McClain was driving the Chevrolet truck going south on Piedmont Road, and there was some testimony that he was running fifty-five to sixty-five miles per hour, that he at no time gave any warning signal of his approach, and that if the plaintiff's husband or the defendant McClain had looked in the direction of each other on the occasion in question nothing on Piedmont Road would have prevented either of them from seeing the other for at least one fourth of a mile. The testimony of the defendants' witnesses tended to show that the plaintiff's husband stepped out from behind the rear of the parked

Ford truck and walked into the side of the Chevrolet truck driven by McClain and was killed.

■ It can not be affirmed as a fixed rule that one crossing a street or highway diagonally must turn and look back. Whether he should do so depends on the circumstances of the particular case. He must be alert, but when he must look depends on the law of the road, the current of traffic, his means of observation, the local conditions, the position and direction of moving vehicles, etc. Lamont v. Adams Express Co., 264 Pa. 17 (107 Atl. 373). "It is not negligence, as a matter of law, for a pedestrian to cross a public street at a point where there is no crosswalk. In doing so he may 'assume a greater risk from passing vehicles and animals using the main thoroughfare than he does when passing over a crosswalk.'" Southern Bell Telephone &c. Co. v. Howell, 124 Ga. 1050, 1052 (53 S. E. 577, 4 Ann. Cas. 707). In the instant case the plaintiff's husband, in diagonally crossing the street from east to west in a southwesterly direction, pursued a course which, if we adopt the plaintiff's theory of the case, was more fraught with danger from traffic approaching on his right (from the north) than it would have been had he pursued a direct course from east to west. However, if he entered the street in front of the stationary truck, and started walking across the street in a southwesterly diagonal direction from the east side to the west side of the street, the northbound traffic would be expected to be moving on the eastern side of the street and would approach the plaintiff's husband on his left, and if he was looking to his left at the time he was hit by the truck approaching from the north (plaintiff's husband's right) at a point on the left side of the center of Piedmont Road relatively to the direction in which the truck was moving (south), and he had not yet reached the center of said street where the flow of traffic would be expected to approach the plaintiff's husband from his right and somewhat behind him, it can not be said as a matter of law that, because at this point he did not look back or look to his right, the plaintiff's husband's negligence was such as to prevent a recovery.

Even if the evidence was the same except that the plaintiff's husband in crossing the street passed behind the parked truck instead of in front of it, and he was looking to his left, the direction from which the traffic was expected to approach, and he was hit by

a truck traveling on its left side of the road instead of its right, it was still a question for the jury under all the circumstances of this case to determine the proximate cause of the injury. 2 Blashfield's Cyc. Automobile Law, (2d ed.), § 1452; 5-6 Huddy's Cyc. Automobile Law, § 97; 79 A. L. R. 1092; Mosso *v.* Stanton, 75 Wash. 220 (134 Pac. 941, L. R. A. 1916A, 943); Salsich *v.* Bunn, 205 Wis. 524 (238 N. W. 394, 79 A. L. R. 1069). In the Salsich case it was said that the same rule as to the duty of one directly or diagonally crossing a "busy down-town city street" to look, after passing the center of the same, and make an observation as to traffic approaching from his right, does not apply in a situation where the occurrence happens at a place a considerable distance from the business or down-town section of the city, and where the conditions existing are not unlike those ordinarily confronting a pedestrian on a well-traveled State or United States highway. Thus, "A pedestrian has a right to cross a street [highway] diagonally in the middle of the block, or elsewhere than at a crossing, subject to the duty of making reasonable use of his senses in order to observe impending danger, though he may rely to some extent on the motorist exercising reasonable care, and whether he is in the exercise of ordinary care in so doing is usually for the jury." 2 Blashfield's Cyc. of Automoble Law and Practice, § 1452.

The jury was authorized to find either that the plaintiff's husband came from behind or in front of a parked truck; that if he came from in front of the parked truck there was nothing in Piedmont Road to obstruct the view along said road for one fourth of a mile; that if he came from behind said parked truck the only thing that would have obstructed either his view or that of the defendant McClain was the parked truck; that no signal by blowing the horn or otherwise was given by McClain; that the defendants' truck was exceeding the legal speed limit and was being driven on its left side of the road, and struck the plaintiff's husband before he had reached the center of the road, and threw him approximately seventy feet south down Piedmont Road; that he was crossing the street in a diagonal direction to enter the car of his foreman which was parked on the other side of the street; that he entered the street or highway, which was paved and was thirty-four feet wide, from the eastern side thereof, and traffic going north on the east side of the street would approach him on his left; and that he

looked to his left. If we concede that he failed to look to his right, though there is no evidence to show that he did not look to his right, yet, he had not reached the center of the street at the time he was hit, and if the defendants' truck had remained on its right side of the street, relatively to the direction in which it was traveling (it appearing that the parked car did not prevent the defendants' truck from passing it without crossing the center line), the plaintiff's husband would not have been killed. We do not think, as contended by the plaintiffs in error, that the evidence demanded a finding that the plaintiff's husband by ordinary care could have avoided the consequences to himself caused by the defendants' negligence (Code, § 105-603), and for this reason was not entitled to recover.

Whether a pedestrian, who was on the left side of a road on which an automobile was traveling and who was hit by said automobile, was negligent in not looking to his right for the automobile approaching in that direction is a jury question. In other words, the failure of a pedestrian, in crossing a street and before passing over the center thereof, to look to his right for an automobile approaching from his right, but which automobile is traveling on its left side of the road instead of its right, is not contributory negligence as a matter of law. Michelson v. Davis (Mo. App.), 227 S. W. 641; Lawrence v. Bartling & Dull Co., 255 Mich. 580 (238 N. W. 180) ; Rowland v. Brown, 237 Mich. 570 (213 N. W. 90) ; Strange v. Los Angeles Examiner, 124 Cal. App. 419 (12 Pac. 2d, 678) ; Craft v. Stone, 74 Ind. App. 71 (124 N. E. 473) ; Cowell v. Saperston, 149 App. Div. 373 (134 N. Y. Supp. 284) ; Mosso v. Stanton Co., (supra). We can not say that the evidence did not authorize the verdict. It may be that the jury found that both the defendants and the plaintiff's husband were negligent but that the defendants' negligence exceeded the negligence of the plaintiff's husband, and that the plaintiff's husband by the exercise of ordinary care could not have avoided the injury, and then applied our rule of comparative negligence and awarded damages in favor of the plaintiff only in proportion to the amount of negligence of the defendants which was in excess of that of the plaintiff's husband, for the total value of the life of the plaintiff's husband, according to the mortuary tables, would have amounted to approximately $18,000, whereas the verdict was for only $2500.

■ The judge charged the jury in part as follows: "I call your

attention to this rule, that the deceased must have been in the exercise of ordinary care to protect himself against *any* negligence on the part of the defendant, if there was such, and ordinary care as applied to him has the same definition as that already given you before, that is, he must have exercised the same degree of care that an ordinarily prudent person would have exercised under the same or similar circumstances, and if the deceased could have by the exercise of ordinary care, avoided the consequences to himself of the defendant's negligence, if there was such, then the plaintiff would not be entitled to recover. If the deceased and the defendant were equally negligent, the plaintiff could not recover. The plaintiff could only recover in the event there was negligence both ways, if the negligence of the defendant predominated, and that would be subject to the comparative damage rule which I will give you later." (Italics ours.) Later in his charge the judge gave the rule as to comparative negligence, and immediately following, in the next sentence, charged: "The rule of comparative negligence does not apply where the negligence of the deceased was the sole cause, or where the deceased could have avoided the consequences to himself of the defendant's negligence, if there was such, by the exercise of ordinary care."

In their brief the defendants say that they contended "on the trial of the case that the negligence of the deceased was the sole and proximate cause of his injury; that he utterly failed to exercise the degree of care legally required of him, that being ordinary care; and that the evidence both for the plaintiff and the defendants showed conclusively that he did not exercise any care at all for his own safety." The defendants further contended that the lack of ordinary care on the plaintiff's husband's part was that he failed to look to his right, the direction from which the defendants' truck came, and when it struck and killed him he could have seen it three hundred yards away if he had so looked, and that it was error requiring a new trial for the judge to fail to charge the jury, without request, as follows: "If the negligence of the defendants was existing at the time that the plaintiff's husband was injured, and he, in the exercise of that degree of care and caution which an ordinarily prudent person would exercise under similar circumstances, could have discovered the defendants' negligence and when discovered could, by the exercise of a like degree of care, have avoided

the same, then she can not recover." The plaintiffs in error do not object to the charge which was given except that it did not go far enough. They contend that the judge, without request, should have gone farther and charged as indicated above. "The grounds of the motion for a new trial which except to the failure of the court to give certain specific instructions to the jury are without merit. The general charge covered the issues in the case, though in some respects but meagerly; and if more specific instructions were desired upon certain issues, a timely request therefor should have been made." *Rountree* v. *Neely,* 147 *Ga.* 435 (94 S. E. 542). "The failure to give in charge a pertinent instruction not requested in writing will not require a new trial, where the general charge substantially covers the issues in the case." *Western & Atlantic Railroad Co.* v. *Tate,* 129 *Ga.* 526 (6) (59 S. E. 266).

It might be noted that the negligence referred to in the excerpt first above quoted is "any negligence" which is broad enough to include "existing negligence." The charge, the failure to give which is urged as constituting reversible error, though there was no request, is the doctrine of last clear chance, and is but a phase of proximate cause. After a careful reading of the charge, which of course included instructions on "proximate cause," we think the general charge substantially covered the issues raised by the pleading and the evidence. If more specific instructions were desired on this issue a timely written request should have been made. *Kimbrell* v. *State,* 57 *Ga. App.* 296 (195 S. E. 459).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*