WRIGHT *v.* BARRON.

1. AUTOMOBILES—INTERSECTION—OBSERVATION—FLEETING GLANCE.
   Testimony that plaintiff motorist who stopped in midsection of through highway, which had 22-foot traffic strips on each side of 23-foot center division, and, for "a second or two," saw defendant's truck approaching some 850 to 1,000 feet away, noted its color, that it was beyond a crossroad with which she was familiar and that its speed was 35 to 40 miles an hour, indicates that she gave much more than a fleeting glance, hence she would not be guilty of contributory negligence as a matter of law for failure to make sufficient observation of traffic approaching intersection.

2. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE—INTERSECTION ACCIDENT—PROXIMATE CAUSE.
   On appeal from judgment for defendant notwithstanding verdict for plaintiff, evidence *held*, such as to permit finding by jury that accident was due solely to defendant's negligence in operating his truck, with defective brakes, on through highway

Contributory negligence of plaintiff a question of fact for the jury, see 2 Restatement, Torts, § 434; comment c; standard of conduct defined, §§ 283–285.

at an accelerated speed and in turning instead of continuing straight ahead at intersection with inferior highway on which plaintiff was driving, or that accident occurred after plaintiff had cleared the crossing.

3. AUTOMOBILES—LOCATION OF CARS AFTER ACCIDENT—JUDGMENT NOTWITHSTANDING VERDICT.

A court should not substitute its conclusion as to the cause of an intersection accident, arrived at from the location of the cars involved after the accident, for the jury's different conclusion, arrived at from a consideration of all the testimony.

4. SAME—CROSSING THROUGH HIGHWAY—DEFECTIVE BRAKES.

A motorist on inferior highway, in forming a judgment that she has sufficient time to cross through highway safely is not bound to anticipate that brakes of truck, approaching on latter highway, would not work.

5. APPEAL AND ERROR—WEIGHT OF EVIDENCE—QUESTION FOR JURY.

The weight of the testimony is for the jury, especially where it is conflicting.

6. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—INTERSECTION OF STATE AND US-HIGHWAYS.

Contributory negligence of westbound motorist on inferior State tarvia highway who stopped at midsection as she crossed divided US-highway and observed defendant's southbound truck approaching some 850 to 1,000 feet away at speed of 35 to 40 miles an hour and then reached a place nearly, if not completely, across concrete of southbound traffic lanes when hit by left front portion of truck, held, a matter for jury.

BUTZEL, NORTH, and DETHMERS, JJ., dissenting.

Appeal from Allegan; Miles (Fred T.), J. Submitted April 8, 1947. (Docket No. 12, Calendar No. 43,614.) Decided June 27, 1947. Rehearing denied October 13, 1947.

Case by Dorothy F. Wright against John T. Barron for personal injuries sustained when automobile she was driving was hit by defendant's truck. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed and remanded for entry of judgment on verdict.

*Leo W. Hoffman,* for plaintiff.

*Mitts & Smith,* for defendant.

REID, J.   Plaintiff instituted this suit to recover damages for personal injuries and expenses because of a collision at an intersection.   The verdict was in favor of plaintiff for $5,000 damages.   The trial court granted defendant's motion for judgment notwithstanding the verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law.   Plaintiff appeals.

About 4 p.m. on October 15, 1943, plaintiff was driving northwesterly on M-43, approaching the intersection of M-43 with US-31.   The latter is a two-lane concrete highway, with two 22-foot concrete strips separated by a strip of land 23 feet wide, and is a through road as to each of its slabs. M-43 is a tarvia road about 18 feet wide extending in a northwesterly and southeasterly direction, while US-31 is nearly north and south in direction. Both slabs of concrete of US-31 continue directly across M-43 without concrete apron or concrete lateral extension.   Tarvia aprons join the tarvia of M-43 with the concrete of US-31.

Plaintiff testified that as she approached the easterly slab of US-31 and just before entering it, she brought her Mercury passenger automobile to a complete stop.   The weather was rainy and misty. Plaintiff further testified that when her car had proceeded to a point on M-43 midway between the two slabs of US-31, she again came to a complete stop and observed the condition as to traffic on the westerly concrete slab, both to the north and to the south.   At this position plaintiff could see northerly along the westerly slab of US-31 for a distance of about 1,000 feet, although about 500 feet northerly the slab curves somewhat toward the west.   She

testified that from her position she observed defendant's truck for "a second or two." She further testified that she observed it long enough to note its color and that its location was beyond the crossroad, and testified that she formed a judgment as to the distance of the truck from her and that its speed was 35 to 40 miles an hour. Such testimony embodied four diverse elements of observation and implies much more than a mere fleeting glance. This case is therefore not to be governed by the rule as to fleeting glance laid down in Nelson v. Linderman, 288 Mich. 186, 190.

Plaintiff testified that when she made the second stop above mentioned at the boulevard strip the defendant's truck was in the curve and about 850 to 1,000 feet from her, that it was beyond the first crossroad northerly, the location of which crossroad she knew. She testified that as she was progressing through the intersection she was going about 5 miles an hour and that as she looked the second time and saw the truck, her car was then half way or more than half way across the westerly lane and the truck was 150 to 200 feet away and coming at 70 miles an hour, "coming like lightning." If, as she testified, the truck was then over 150 feet away, in order to come into collision with plaintiff's car on the cement it must have traveled 8 times as fast as plaintiff's car and must therefore have been going at the rate of at least 40 miles an hour at the time of the impact. Plaintiff's testimony clearly indicates an acceleration of speed by defendant's driver, and the weight of that testimony was for the jury. The jury could have well concluded that there was sufficient acceleration of defendant's truck as it left the curve to cause the collision and that without the acceleration the collision would not have occurred.

Plaintiff claims that her car was struck after it was off the concrete, and testified on that subject as follows:

"*Q.* And where was your car when it was struck?
"*A.* My car was completely across the highway onto the tarvia, unless the back wheels might have been on the highway, but I don't think so.
"*Q.* You speak of tarvia. M-43 is tarvia?
"*A.* That is right.
"*Q.* And US-31 is cement, is that right?
"*A.* That is right.
"*Q.* But where the road intersects. the tarvia ceases and the cement goes on through, isn't that right?
"*A.* That is right.
"*Q.* And so you say your car was on the tarvia, except what part?
"*A.* The back wheels.
"*Q.* And they were where?
"*A.* On the cement.
"*Q.* That is your opinion, you say?
"*A.* Yes, that is my opinion. If it wasn't clear across, it wasn't more than the back wheels on the cement."

The driver of defendant's truck testified that the truck could not be driven at more than 50 miles an hour because it had a governor that was working at the time of the accident. He further testified that he was traveling not over 35 miles an hour, and was on the right side of US-31, and that upon observing plaintiff proceed onto the concrete of the westerly slab he applied his brakes, and that as the front of plaintiff's vehicle was approaching the middle of the slab he turned his vehicle to the right. His testimony is as follows:

"*Q.* You couldn't have turned after you hit her?
"*A.* No.

"*Q.* You turned before you hit her, didn't you?

"*A.* That is right, I told you that before.

"*Q.* Because you hit her with the left corner of your truck.

"*A.* Right. So I would have had to have been turning. * * * * My truck * * * was turned enough so that with the position of the cars in that intersection, that I hit her with my left hand corner of the front of my truck. And my right corner wasn't damaged to any great extent."

Defendant's driver was on the westerly side of US-31 before he began to turn to the right. He turned the truck to the right to such an extent that although the angle of the side lines of the two roads at the particular corner was an acute one (shown by a diagram attached to the record to be about 77 degrees) still only the left front corner of the truck came into collision with plaintiff's vehicle.

Plaintiff's car came to rest on the east side of the pavement, partly on the cement pavement and partly off the pavement, about 121 feet from the intersection in question. A witness who was hunting in a nearby field testified that when he heard the crash he turned around and saw plaintiff's car spinning around in circles going in a southerly direction on the west lane of US-31.

Defendant argues that the location of plaintiff's car after it came to rest following the collision indicates that the collision occurred on the cement of US-31 and in the intersection. The court should not substitute any conclusion arrived at from the location of the cars involved for the jury's different conclusion, arrived at from a consideration of all the testimony. Very important discussion on this subject occurs in *Prove* v. *Interstate Stages,* 250 Mich. 478, 490, and *Bates* v. *Franson,* 276 Mich. 79, 82. We cannot say that the jury could not have

properly concluded that the impact of the left front corner of defendant's truck caused the front wheels of plaintiff's car to swing around to the left while the rear wheels (with frictional resistance to lateral push) retarded the rear of plaintiff's car in a general motion toward the south, and that the heavy truck pushed the lighter car of plaintiff back onto the cement, US-31, while the truck was following the general direction into which the driver of the truck had swerved the truck, on into the field where it came to rest. It was for the jury to draw the inferences as to the place and manner of the collision within the limits of the testimony. The location of the plaintiff's car as it came to rest after spinning around in circles is not to be taken as indicating the location of the collision as a matter of law and against the jury's verdict.

It was the duty of defendant's driver in approaching the intersection of two State trunk lines to have his truck under control. In endeavoring to bring his truck under control, he found that his brakes were ineffectual. He testified: "It was just like sliding nothing." Defendant's driver then turned the truck to the right. It was for the jury to determine the correctness of a conclusion that the collision would not have occurred if the truck had proceeded straight forward.

In forming her judgment that she could cross safely, plaintiff was not bound to anticipate that the brakes of defendant's truck would not work and that the driver of the truck would swing the truck to the right. The jury could conclude that it was the discovery that the brakes were not working that caused whatever confusion there was on the part of defendant's driver. If defendant's driver was thrown into confusion by reason of a belated discovery that his brakes were ineffectual, plaintiff

should not be considered responsible for such confusion.

There is testimony from which the jury could find that the collision took place outside of the intersection, after plaintiff's car had cleared the intersection. Such finding by the jury need not depend solely upon plaintiff's testimony as to the location of her car at the time of the collision but could find support in the testimony of defendant's driver as to his swerving his truck to the right after he had been traveling near the west edge of US-31. The extent of such swerve toward the west could have been found by the jury to have been several feet, to bring about the contact with the left front corner of his truck which the truck driver himself described, without involvement of the right front corner. The weight of the testimony, as we have often said, was for the jury.

Many collisions at intersections have been considered by us. Each case must be considered on its own merits.

In view of the conflict in the testimony in the case at bar as to the point where the collision occurred, and in view of what has been said by this Court in *Hale* v. *Rogers,* 244 Mich. 69, 71, *Swainston* v. *Kennedy,* 253 Mich. 518, 520, 521, and other cases, we consider that the claimed contributory negligence of plaintiff was a matter for the jury.

Defendant compares the situation and acts of plaintiff in this case with the situation and acts of plaintiff's driver in the case of *Ann Arbor Construction Co.* v. *Russ,* 312 Mich. 527, but the two cases in many respects are dissimilar. In the *Ann Arbor Construction Co. Case,* plaintiff's driver was driving a truck which with equipment weighed approximately 8 tons and after observing defendant's truck about 900 to 1,000 feet away, plaintiff's driver

started to cross the intersection, put his truck into "creeper" gear, and it took 3 or 4 seconds to get his car started up an incline, the front of the car being about 3 feet higher than the rear, whereas in the case at bar plaintiff Wright's passenger car was a Mercury coupe and the intersection was level.

There is sufficient testimony in this record to sustain a finding on the part of the jury that defendant's driver was guilty of negligence and that plaintiff was free from contributory negligence.

The judgment is reversed. The case is remanded to the trial court for entry of judgment for plaintiff on the verdict for $5,000. Costs to plaintiff.

CARR, C. J., and BUSHNELL, SHARPE, and BOYLES, JJ., concurred with REID, J.

NORTH, J. (*dissenting*). Careful review of the record on this appeal brings the conclusion that the circuit judge properly disposed of the case by entering on defendant's motion judgment notwithstanding the verdict, and therefore I am unable to concur in the opinion of Mr. Justice REID wherein he reverses the judgment of the circuit court.

On this review we must view the testimony in the light most favorable to plaintiff; but in so far as the testimony in plaintiff's behalf is in conflict with the undisputed physical facts, such testimony cannot be accepted. With the foregoing in mind we find the facts disclosed by this record are as follows. During daylight hours plaintiff driving a five-passenger Mercury coupe on M-43 in a westerly direction approached the intersection of that highway with US-31. M-43 is a tarvia road about 18 feet in width. At the point of the accident US-31 extends in a northerly and southerly direction. It is a super-highway composed of 2 concrete lanes

for traffic, each being 22 feet wide, the two lanes being separated by a parkway 23 feet in width. Traffic on US-31 has the right of way over traffic on M-43. The westerly concrete lane of this U.S. highway is for southbound traffic and defendant's truck was approaching thereon from a northerly direction. There is a stop sign located in the intervening parkway on US-31 at the northerly side of the intersection governing traffic proceeding northwesterly on M-43. Plaintiff claims that she stopped opposite this road sign and made an observation for traffic approaching on the westerly lane of US-31. She looked to the north and saw defendant's truck approaching at a distance from the intersection of 850 to 1,000 feet. She estimated its speed at 35 to 40 miles per hour. She then made an observation for traffic from a southerly direction, and started her car across the intersection. When she was about halfway across the westerly lane of US-31, proceeding at about five miles per hour, plaintiff looked again to the north and saw defendant's truck approaching at a distance of 150 to 200 feet and, as plaintiff estimated, at a rate of 70 to 80 miles per hour. Plaintiff "stepped on the gas" and tried to get across without a collision occurring. Her testimony is that her car either got completely across the westerly lane of US-31 or: "If it wasn't clear across, it wasn't more than the back wheels on the cement." In this particular her testimony is in conflict with that of the two men who were riding as co-drivers in defendant's truck. Their testimony is that when the collision occurred plaintiff's car was on the westerly lane of US-31.

The testimony and photographic exhibits conclusively show that the left front portion of defendant's truck struck plaintiff's car practically opposite the right hand end of the windshield. The

impact was such that plaintiff's car was whirled around and traveled southerly about 121 feet along the westerly lane of US-31, coming to rest headed in a northerly direction with about one foot of the left hand side of the car being on the east edge of the cement. The driver of the truck testified that as the collision was imminent, in an effort to "lessen the impact," he turned his vehicle to his right. Following the impact the truck continued in a southwesterly direction through a ditch or slight depression and into a field coming to rest about 176 feet from the point of accident.

Other salient circumstances surrounding this accident may be noted as follows. Plaintiff was an experienced driver and testified that she was "very much familiar with the intersection." Her view from where she stopped her car was wholly unobstructed. There were no traffic complications or other distracting circumstances. While it was a damp and somewhat rainy day, plaintiff's testimony disclosed that her vision was not thereby obstructed. The weather conditions afforded no excuse or explanation favorable to plaintiff on the issue of her alleged contributory negligence, so far as disclosed by this record. While plaintiff testified that at the time she first saw defendant's truck approaching, "I figured to the best of my judgment I had plenty of time to cross the highway;" nonetheless she further testified that her observation at that time was limited to "a second or so," and she did not make a further observation in the direction of the oncoming truck until she was out upon the westerly lane of US-31 and only an instant before the crash occurred. In *Lodato* v. *Campbell,* 284 Mich. 217, we said:

"Plaintiff's thought that he could cross ahead of the approaching car did not relieve him from test-

ing the accuracy thereof by subsequent observation of the known rapidly changing condition.''

And concerning the legal requisites of an observation we have held:

''Something more than a fleeting glance at an approaching car is necessary if plaintiff seeks to avoid the burden of contributory negligence.'' *Nelson* v. *Linderman,* 288 Mich. 186.

We are in accord with the finding of the circuit judge incident to his granting defendant's motion for judgment *non obstante veredicto:* ''that when plaintiff stopped, her observation was insufficient; either she did not look long enough to determine the speed of the coming truck, or her estimate of its distance from her was terribly wrong.''

It is quite impossible to escape the conclusion that this accident never would have happened had plaintiff not been negligent in attempting to cross the preferred highway on which defendant's truck was rapidly approaching without making an adequate observation as to the distance the truck was from the intersection and the rate of speed at which it was approaching.

''If one is to make a proper observation of an oncoming car, * * * the observation must include not only the distance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed. *Ayers* v. *Andary,* 301 Mich. 418, 425.'' *Malone* v. *Vining,* 313 Mich. 315.

To the same effect see *Beers* v. *Arnot,* 308 Mich. 604; *Waskelis* v. *Continental Baking Co.,* 310 Mich. 649. Decision in the instant case is not at all affected by accepting plaintiff's version of the facts that the impact occurred just as her automobile was.

leaving the cement surface of US-31, rather than the testimony in behalf of defendant that the accident happened on the westerly lane of US-31. If it happened under the latter circumstances there could seem to be no question that it was due to contributory negligence as a matter of law on the part of plaintiff. On the other hand, if the collision occurred at the instant plaintiff's car was leaving the westerly lane of US-31, we think the record conclusively discloses that the collision was caused by plaintiff's own negligence. She drove directly in front of defendant's rapidly moving truck and thereby produced an emergency condition causing defendant's driver to veer the truck to his right in an effort to avoid disaster, and the collision followed.

Careful consideration of this record as a whole leads to the inevitable conclusion that had plaintiff exercised reasonable care when she stopped her car in the place of safety between the two lanes of traffic on US-31 and there observed the approach of defendant's truck, this accident would not have happened. Hence, even though we assume that the driver of defendant's truck was guilty of some negligence, still plaintiff is not entitled to recover because she was guilty of contributory negligence as a matter of law.

The judgment entered in the circuit court should be affirmed, with costs of this Court in favor of appellee.

BUTZEL, and DETHMERS, JJ., concurred with NORTH, J.