SHUMKO *v.* CENTER.

AUTOMOBILES—NIGHTTIME—PEDESTRIAN—CONTRIBUTORY NEGLIGENCE —SPEED.

> Plaintiff pedestrian who was some *300'* south of intersection controlled by traffic light at 9 p.m. in mid-November in west part of 4-lane highway and who had determined that north-bound traffic would not permit his completion of crossing in safety failed, as a matter of law, to exercise due and·proper care in not having made timely observations to the north or, after discovering movement of southbound traffic, in not returning to west curb, there being nothing to impair his vision to the north from which direction defendant approached at speed of 25 miles per hour.

BLACK and KAVANAGH, JJ., dissenting.

Appeal from Wayne; Bowles (George E.), J. Submitted January 4, 1961. (Docket No. 22, Calendar No. 48,516.) Decided June 29, 1961. Rehearing denied September 21, 1961.

Case by Perry Shumko against Theodore J. Center for personal injuries sustained when struck by automobile. Judgment for defendant notwithstanding verdict. Plaintiff appeals. Affirmed.

*Nicholas Salowich,* for plaintiff.

*Erickson, Dyll, Marentay & Slocum (Henry C. Odbert,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES

5A Am Jur, Automobiles and Highway Traffic §§ 757, 758.
Duty of pedestrian crossing street or highway as regards looking for automobiles. 79 ALR 1073.

CARR, J. Plaintiff brought this action in circuit court to recover damages for injuries sustained by him as the result of being struck by defendant's automobile. The accident occurred on Dix highway in the city of Melvindale at about 9 o'clock in the evening of November 17, 1955. Said highway had two 10-foot lanes for southbound traffic and two for northbound traffic. It intersected Oakwood boulevard approximately 300 feet north of the point where the accident took place.

It appears from plaintiff's testimony in the case that he was 63 years of age at the time he received the injuries in question, that he was at the time working as a truck driver, that he owned his equipment, and that over a period of a number of years he had been engaged in hauling various commodities in Michigan and also in other States, driving approximately 75,000 miles per year for the preceding 10-year period. On the occasion in question he had been, immediately prior to the accident, in the company of other truck drivers with whom he had eaten dinner. Plaintiff had left his truck in a terminal on the east side of Dix highway, and he approached that thoroughfare on the westerly side thereof with the intention of crossing to the place where he had left his truck. It appears that he stepped into the street and received the injuries in close proximity to the westerly edge of the pavement.

On the trial of the cause before judge and jury it was claimed on behalf of plaintiff that the defendant was guilty of negligence in the operation of his automobile, and particularly in failing to so drive as to avoid striking the plaintiff. Plaintiff's case rested largely on his own testimony. Defendant claimed that when he was approximately 25 feet from the point of impact plaintiff walked upon the pavement, that the brakes of the car were immediately applied in full force, that the vehicle came

nearly to a stop before the point of impact but struck plaintiff with sufficient force to throw him to the pavement approximately 3 feet from the westerly edge.

Defendant's motion for a directed verdict at the close of plaintiff's proofs, renewed following the completion of the testimony, was taken under advisement by the trial judge and the case was submitted to the jury. A verdict was returned in favor of the plaintiff and thereafter a motion for judgment notwithstanding the verdict was submitted on behalf of defendant. It was the opinion of the trial judge, based on the proofs in the case, that the evidence was inconclusive as to defendant's negligence, and that plaintiff was guilty of contributory negligence as a matter of law. The motion was granted for the reasons set forth in the opinion, and plaintiff's motion to vacate the judgment in defendant's favor was denied. Plaintiff has appealed, alleging that the trial judge erred in granting defendant's motion for judgment and in refusing to set it aside.

On the trial in circuit court an exhibit was introduced in evidence indicating the situation existing at the place where the accident happened, and the intersection of Oakwood with Dix highway. It would appear therefrom that the last named thoroughfare ran northerly from the place where plaintiff was injured without curves or obstructions that would tend to interfere with the view to the north. It is not disputed that defendant was driving in a southerly direction as he approached Oakwood avenue on what appears from the exhibit to be an extension of Dix highway designated as Raupp road. Traffic at the intersection was at the time of the occurrence in question here governed by lights of the usual character. Defendant stopped before entering the intersection to await a change of the lights in his favor, and it appears that other traffic did

likewise. When the controlling light changed to green the traffic moved south on Dix, defendant proceeding, as he claimed, at a rate of speed of approximately 25 miles per hour, to a point where he first observed plaintiff starting to cross the highway. It was further defendant's claim that immediately on seeing plaintiff come upon the pavement he applied his brakes. Plaintiff was struck by the right front, either fender or headlight, of the automobile, and apparently was thrown in the direction that the car was moving. However, the vehicle did not run over him due, as it is claimed, to the fact that the applied brakes brought it to a stop.

In determining the question whether the trial judge was in error in granting the motion for judgment notwithstanding the verdict of the jury due consideration must be given to the general rule that under the situation here presented the testimony must be construed favorably to plaintiff. This requires that, notwithstanding certain conflicts in the testimony as given by the witnesses, it must be assumed that plaintiff undertook to proceed across the pavement in the manner claimed by him, and that he made the observations to which he testified. It is not disputed that he suffered severe injuries, including a broken left leg.

Plaintiff's version of the accident and the attendant circumstances is indicated by the following excerpts from his testimony as set forth in the transcript returned to this Court by the circuit court as a part of the original record in the cause. After indicating that he and his companions were in or near a truck belonging to one of them, he testified:

"*A.* Yes. I was walking here on the sidewalk. Truck stays in here on the drive. Well, lights on the street, plenty lights there. I walk a little more, just in here, step off of sidewalk, walk to curb. I am stop on the curb, look north and south, no ma-

chine north. I see machine south pretty far. I step about 2 steps and I see the machines come pretty fast. I stop. I stop about 2 steps off of curb. I look in the back, the machine is come from north. I just swing around, have no chance to get up and it just hit my leg and I fall down on right shoulder. I hit pretty hard the road. * * *

"*Q.* You said when you started to cross Dix avenue you looked to the north and there was no traffic.

"*A.* No traffic.

"*Q.* You looked to the south and you saw a car?

"*A.* Coming.

"*Q.* Quite a ways down?

"*A.* Yes.

"*Q.* You took some steps across Dix avenue you said?

"*A.* Yes.

"*Q.* Then you looked and saw this car coming from the south coming fast?

"*A.* Yes.

"*Q.* So you stopped?

"*A.* Yes.

"*Q.* You looked to the north and then you saw this other car coming?

"*A.* Another car coming.

"*Q.* Then you turned and got hit?

"*A.* I tried to run away. I just swing around and the car just get me. * * *

"*Q.* How many steps did you take from what would be a curb line, Perry, before you stopped to look to the south?

"*A.* I just stopped on the curb. I see no machine from the north. I see the machine from south. I just stepped 2 steps. I see the machines come pretty fast. I stop. I look north. The machine come from north. I just swing myself, no chance to get out, and catch my left leg.

"*Q.* But when you stepped from what would be a curb line on the road you looked to your left and you did not see any car?

"*A.* No car.

"*Q.* You took the 2 steps and looked to the right and saw a car?

"*A.* Yes.

"*Q.* Then you stopped?

"*A.* Yes.

"*Q.* Then looked to the left again and a car was coming.

"*A.* Cars coming and I just swing myself."

Other testimony by plaintiff is of like tenor but the foregoing is sufficient to indicate his claim as to what occurred and what he did, and also what he failed to do, for his own safety. As before noted, when he came to the edge of the pavement on Dix highway he had a clear view to the north and an opportunity to view the condition of the lights at the intersection with Oakwood. If at the time he looked the light was red against traffic coming south on Dix plaintiff was in position to note the vehicles, including defendant's, that were waiting for the traffic signal. He must have realized that automobiles were, or shortly would be, traveling in a southerly direction.

Having looked to the north, as he claimed, plaintiff then stepped out upon the pavement a short distance and looked to the south. Apparently he concluded that traffic from that direction was coming at a rate of speed that would not permit him to cross the street in safety. He accordingly stopped. It is a fair inference from the testimony that he was watching the northbound traffic on the east side of Dix while standing on the pavement on the west side. From his experience he must have realized the danger of his position, and have known that he might be in peril from southbound traffic. However, he did not step back to the edge of the pavement nor did he make further observation to the north until defendant's automobile was, as he claimed, within

20 or 25 feet from him. Such delay is unexplained. He did not claim in his testimony that there was any necessity for his continuing to watch northbound traffic or that he was prevented for any reason from making due observations to his left. His experience in driving for many years previously undoubtedly made him well aware of traffic hazards.

Accepting plaintiff's testimony as to his conduct immediately prior to the accident, may it be said that he was exercising reasonable care for his own safety? He put himself in a position of peril from southbound traffic by entering on the pavement and remaining there in a position of danger. We cannot avoid the conclusion that a person exercising due and proper care for his own safety would have either returned to the edge of the pavement or have made timely observations of possible traffic from the north. It further appears that when he actually discovered the approach of defendant's car he undertook to turn around, presumably to walk back to the curb line, instead of stepping backward a pace or two. Had he followed the latter course it is a fair conclusion from his testimony that defendant's automobile would not have come in contact with him. It thus appears that plaintiff not only failed to exercise reasonable precautions to guard himself against injury from traffic, but also failed to adopt the obvious method of avoiding injury after he discovered the danger in which he was placed.

Each case of this character must be determined on the particular facts involved, with due regard to the general rule that one against whom a verdict is directed, or who appeals because a verdict in his favor has been set aside, is entitled to have the testimony construed favorably to his claims. The trial judge in denying the motion to vacate the judgment entered notwithstanding the verdict of the jury referred to several recent decisions of this Court,

distinguishing the factual situations involved therein from that shown by the record in the present case. After summarizing plaintiff's testimony, the judge, said in the opinion filed by him:

"I cannot perceive how reasonable men could have found otherwise than that plaintiff was contributorily negligent under this state of facts, laying aside the question of defendant's negligence as to observation or control of his vehicle. It is distinguishable from the case where a plaintiff does not have uninterrupted vision or the case where a pedestrian fails to look after passing the center of the street for say automobiles running on the wrong side of the street. See *Rowland* v. *Brown*, 237 Mich 570, 576. Rather it is a case where there was clear vision, where the plaintiff looked to the north and did not see defendant's car and first observed it after he then had looked to the south and then back to the north and then found defendant's car only a few feet from him."

We are in accord with the conclusion reached by the trial judge with reference to the contributory negligence of the plaintiff. The situation presented on the record is somewhat unusual in that there appears to be no reasonable explanation of plaintiff's failure to exercise ordinary care for his own safety. The conclusion is unavoidable that had he done so he would not have been struck by defendant's automobile.

Whether defendant was guilty of actionable negligence constituting a proximate cause of the accident in question is doubtful under the testimony in the case. However, the conclusion reached as to the contributory negligence of plaintiff renders it unnecessary to consider the arguments of counsel in this respect. It may be noted also that counsel for plaintiff on the trial of the case relied on the so-called last-clear-chance doctrine. In other words, it was claimed that the defendant was guilty of sub-

sequent negligence and that by the exercise of proper care after he discovered plaintiff's peril, and after plaintiff was unable to extricate himself from his position, he might have avoided the accident. The trial judge rejected the theory, and we think properly so.

Plaintiff's negligence continued until the time of the impact. His testimony would indicate that he discovered defendant's approach at about the same time that defendant discovered his presence on the pavement. Plaintiff had at least as good an opportunity to avoid the impact as did the defendant who, in the face of what would seem to be a sudden emergency, sought to stop his automobile rather than to deflect its course and thereby run the risk of interfering with other traffic or of striking plaintiff if the latter undertook to proceed to the east. The facts here do not permit the application of the last-clear-chance rule. The situation in such respect is comparable to that presented in the recent case of *Churukian* v. *LaGest*, 357 Mich 173, where it was said:

"Plaintiff-appellant also asserts that she was entitled to have a jury consider her case under a gross-negligence or last-clear-chance doctrine. Defendant claims that there is nothing in plaintiff's declaration referring to the doctrine of last clear chance or subsequent negligence and that plaintiff cannot now raise this issue on appeal. *City of St. Clair Shores* v. *Conley*, 350 Mich 458. Even if plaintiff had properly raised this issue, for the doctrine to be applicable, plaintiff's negligence must have come to rest leaving her in a place of danger about which defendant's driver knew, or should have known. *Szost* v. *Dykman*, 252 Mich 151; *Morrison* v. *Hall*, 314 Mich 522. We do not view these facts as presenting such a case. Plaintiff's negligent conduct continued up to the very point of impact."

The trial judge was not in error in granting the motion for judgment notwithstanding the verdict, and the judgment entered is affirmed.

Dethmers, C. J., and Kelly, J., concurred with Carr, J.

Kavanagh, J. (*dissenting*). This case was tried in the lower court after the effective date of section 3a of Court Rule No 23 (1945).* Previous decisions in connection with motions for judgment notwithstanding the jury verdict in so-called "assured clear distance" cases do not, now, necessarily apply, because our adoption of the above-mentioned court rule now places the burden of pleading and proving contributory negligence on the defendant.

The facts in the instant case are adequately set forth in the opinion of Justice Carr, except as to some pertinent excerpts of testimony which will be quoted in this opinion.

. The trial judge granted the motion for judgment notwithstanding the verdict on his belief plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff testified there was no curb on Dix highway at the place he attempted to cross. He stated that he stopped at a point approximately where the curb line would normally be constructed. After looking to the north and seeing cars stopped for the red light at Oakwood boulevard and Dix highway, which intersection was over 300 feet away, he

---

* "Sec. 3a. In all negligence cases tried after the effective date hereof, the contributory negligence of the plaintiff shall be deemed to be a matter of affirmative defense to be pleaded and proved by defendant.

"In cases pending as of the effective date of this rule, amendments to pleadings to conform to its provisions shall be granted on motion filed prior to trial."   ·

[Adopted April 14, 1958, effective June 1, 1958. See 352 Mich xiv.—Reporter.]

then looked to his right, or southerly, and observed a car approaching some distance away. He testified he took about 2 steps and then noticed the car from the south was coming pretty fast. He stopped at that point, about 3 feet off the curb line. After apparently watching the car approaching from the south for a period of time and forming an opinion he did not have time to cross, he looked back toward the north where he saw defendant's automobile approaching some 20 or 30 feet away. He testified: "I just swing around, have no chance to get up and it just hit my leg and I fall down on right shoulder. I hit pretty hard the road."

James Metcalf, plaintiff's witness, who was in a position to observe plaintiff, testified a period of time elapsed between the time he saw plaintiff standing in the street and the hearing of braked tires or squealing of tires.

James Parke, who was with James Metcalf at the time of the accident, testified:

"*Q.* When was the next time you saw Perry after he left you, if you can recall?

"*A.* When Metcalf came back out we was talking and I remember of seeing Dave Shuker and Ross Schockly in their tractor pull up by the sidewalk in the driveway and at that time Perry went past in front of the tractor. Then we was talking there and then I looked, like we was approaching the one driveway and I looked out and Perry was standing in the street and then I turned back, I don't know whether one or the other of us said something but anyhow we started to talk again and then I heard the brakes squeal on the car and that is when I looked to see where it was coming from."

Defendant Theodore Center testified as follows:

"*Q.* How many steps had he taken after you first saw him before the impact?

"*A.* How many steps had he taken after I first saw him?

"*Q.* That is right.

"*A.* I don't know how many steps. He took from the curb approximately 2–1/2, maybe 3 steps into the street as I saw him walking."

Later the defendant testified as follows:

"*Q.* And the impact took place, you think, how many feet from what would be the curb line?

"*A.* About 3 or 4 feet.

"*Q.* Three or 4 feet. You said he took 2 or 3 steps?

"*A.* Yes."

Defendant further testified he could not turn his car to the left "because there was a car right next to me."

Stanley Oziem, the driver of the car which was following defendant's vehicle, was called as a witness on behalf of defendant and testified under cross examination as follows:

"*Q.* Were there any other cars in front of you besides this car that was involved in the accident?

"*A.* No, sir. * * *

"*Q.* Those 2 cars were the only 2 cars that were then traveling in a southerly direction?

"*A.* Yes, sir."

Keeping in mind that the west half of Dix highway was 20 feet wide and also that on a motion for judgment notwithstanding the verdict, the testimony must be construed most favorably to plaintiff (*Burgdorf v. Holme-Shaw*, 356 Mich 45; *Cole* v. *Austin*, 321 Mich 548; *Alley* v. *Klotz*, 320 Mich 521), it appears with plaintiff standing not more than 3 feet from the curb line, in plain view of defendant, observing the traffic from both directions, reasonable men might differ as to whether he was guilty of negligence, particularly when defendant had 17 feet to the center of the highway in which he could have

turned to avoid hitting plaintiff. It would appear that plaintiff in standing within 3 feet of a curb line on a highway with 17 feet of road to the center line in front of him was not negligent as a matter of law. Surely a question of fact existed for the jury, as was admitted by the trial court at the time of the court's denial of motion for directed verdict at the conclusion of plaintiff's proofs and at the conclusion of the trial of the case.

If an issue of fact is presented for jury determination, a judgment notwithstanding the verdict cannot be entered. *Wright* v. *Barron,* 318 Mich 409. There was a conflict in the testimony of the witnesses as to how long plaintiff was standing 3 feet from what would be the curb line. The jurors had a right to believe defendant when he said he was only 25 to 30 feet away from plaintiff when he first saw him; or they had the right to draw the inference that defendant, in the exercise of ordinary care, ought to have seen him earlier. They might infer from the testimony which was in conflict, and from the physical facts, that defendant was driving faster than he testified. They might well have found that defendant, in the exercise of ordinary care, even under his own testimony as to when he saw plaintiff, might have turned to the left onto the 17 feet of his half of the highway and avoided the accident. The jurors might have found that a person exercising ordinary care under the same or similar circumstances might stand no more than 3 feet from what normally would be the curb line on a 40-foot highway to observe the traffic and form an opinion as to whether he could cross. If they so found, and it appears by the verdict they did, defendant has not carried the burden of proving plaintiff guilty of contributory negligence. These questions were for the jury to determine. This they did under proper instructions from the court.

The trial court was in error in granting the motion for judgment notwithstanding the verdict. The judgment entered below should be set aside and vacated and the verdict of the jury should be reinstated. Plaintiff should have costs taxed for both the trial court and this Court.

BLACK, J., concurred with KAVANAGH, J.

EDWARDS, J. (*concurring*). We concur in affirmance on the ground set forth in the circuit judge's opinion as quoted by Mr. Justice CARR:

"I cannot perceive how reasonable men could have found otherwise than that plaintiff was contributorily negligent under this state of facts, laying aside the question of defendant's negligence as to observation or control of his vehicle. It is distinguishable from the case where a plaintiff does not have uninterrupted vision or the case where a pedestrian fails to look after passing the center of the street for say automobiles running on the wrong side of the street. See *Rowland* v. *Brown,* 237 Mich 570, 576. Rather it is a case where there was clear vision, where the plaintiff looked to the north and did not see defendant's car and first observed it after he then had looked to the south and then back to the north and then found defendant's car only a few feet from him."

This accident occurred at night on a busily traveled thoroughfare while plaintiff, pedestrian, was attempting to cross midblock. He had only 2 directions in which to observe and could count on no protection from traffic devices or crosswalks. *Cf. McKinney* v. *Yelavich,* 352 Mich 687; *Bartlett* v. *Melzo,* 351 Mich 177; *Barron* v. *City of Detroit,* 348 Mich 213.

The defendant, under the undisputed evidence, had his lights on and was available for plaintiff's unim-

peded observation for over 300 feet as he traveled straight ahead (*cf. Ware* v. *Nelson,* 351 Mich 390) at the legal speed of 25 miles per hour. *Cf. Bartlett* v. *Melzo, supra.*

We find no view of the facts favorable to plaintiff which explains his admitted failure to observe defendant until the instant before impact.

SMITH and SOURIS, JJ., concurred with EDWARDS, J.