## BARTLETT *v.* MELZO.

1. AUTOMOBILES — PEDESTRIANS — RIGHT-OF-WAY — CROSSWALKS — ORDINANCES—SPEED.

   While at common law the rights of pedestrians and motorists at a crossing were equal, a city ordinance according preferential treatment to a pedestrian within a crosswalk at street intersection requires that a motorist approaching the crosswalk do so at such moderate speed as to be able to yield the right-of-way to the pedestrian and be able to stop, if necessary, to accord the pedestrian his right-of-way (Saginaw City Ordinance, § 169).

2. SAME — CONTRIBUTORY NEGLIGENCE — EVIDENCE — PEDESTRIAN AT CROSSWALK—CHANGE OF TRAFFIC LIGHT.

   Claim of contributory negligence as a matter of law on part of plaintiff's decedent *held,* untenable under evidence showing that before he left north curb he had looked both ways, walked on unmarked crosswalk in a straight line when traffic light 1 block to west changed while halfway across and speeding defendant who was racing with another car fatally injured decedent who had "walked pretty fast" and had 1 foot on south curb when hit, notwithstanding city ordinance accorded pedestrian a right-of-way under such circumstances and required motorist to stop (Saginaw City Ordinance, § 169).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic §§ 451, 760.
[2] 5A Am Jur, Automobiles and Highway Traffic § 761.

Appeal from Saginaw; O'Neill (James E.), J. Submitted October 10, 1957. (Docket No. 30, Calendar No. 47,098.) Decided March 4, 1958.

Case by Matilda Bartlett, administratrix of the estate of Charles H. Bartlett, against Theodore F. Melzo and Opal D. Melzo for damages arising from his death when struck by automobile while crossing street. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Harold J. Egloff*, for plaintiff.

*Stanton, MacKenzie, Cartwright & Walker* (H. *Monroe Stanton*, of counsel), for defendants.

SMITH, J. This case involves another pedestrian and another automobile. The pedestrian, Charles H. Bartlett, was 76 years of age. He was crossing Hess street (which runs east and west) at the Prescott street unmarked crosswalk in the city of Saginaw. He was under the dual protection of the Commandment, "Thou shalt not kill," and such vestiges of section 169 of the ordinance of the city of Saginaw as remained effective after our decision in *Moldenhauer v. Smith*, 311 Mich 265.

Mr. Bartlett almost made it. His foot was on the curb when he was struck and killed. The automobile involved was driven by defendant Theodore Melzo. It was engaged in a contest of sport, skill, and horsepower familiar to all of us. When the traffic light (at Robinwood street, a city block west of the Prescott street crosswalk) changed from red to green, defendant and an unidentified driver, both of whom had been waiting at the light, took off "like a couple of horses at the starting post." When they started, we are told, "it seemed to raise the front of their cars and the back of their cars seemed

lower (indicating with hand). They started off at quite a rate of speed." As they proceeded towards the decedent they were, it was testified, "going awfully fast from the start." Witness Eischer, who was behind defendant Melzo's car at the traffic light, testified that "by the time I was 1/2 way between Prescott and Robinwood streets this car (Mr. Melzo's car) had already hit Mr. Bartlett. I was going 20 to 25 miles per hour. The other 2 cars had gone twice the distance I had gone and had started up at the same time." As they proceeded towards the decedent they were "jockeying for position," back and forth. "Number 2 (Mr. Melzo's) car would get a short distance ahead and number 1 would catch up and so on down to the time of impact." During all of this time the decedent was in the crosswalk. (He had reached the center of Hess street when the traffic light a block away changed.) Three hundred feet from the light, only 50 feet from decedent, the outcome of the race was still in doubt, the cars then being "neck and neck." We cannot record the conclusion of this race in the manner traditional to sporting contests, naming the victor, acclaiming his skill, and hailing his triumph, for in this kind of race there is no victor. The loser, however, is clearly identified. He "had already reached the south curb with 1 foot when he was struck and he spun over and flopped down and that was it." Thus, flopping in the dirt in a public street, ended 76 years of life.

But, we are told, the jury's award of damages to the administratrix of the estate of the deceased must be reversed. He was, it is urged, guilty of contributory negligence as a matter of law. Do our decisions furnish support for this contention?

The appellant-defendants' position may best be stated in their own words:

"It is conceded that plaintiff's decedent could proceed with safety to the center line of Hess street inasmuch as the testimony fails to establish that at the time he did so there was any traffic approaching from the east. There is testimony to the effect that such traffic did appear while plaintiff's decedent was at the center line of Hess street. It is the contention of the defendants that if the plaintiff's decedent made an observation upon reaching the center line of Hess street as to traffic approaching from the west, that such observation was improper, or that his subsequent actions in light of that observation were such as to make him guilty of contributory negligence as a matter of law. If it be shown that the observation was not made of eastbound traffic when plaintiff's decedent was at the center line, then defendants contend that such a failure would make plaintiff's decedent guilty of contributory negligence as a matter of law. If the plaintiff's decedent ventured into the southerly eastbound lane of Hess street, being unable to observe what traffic was approaching, then such action would also constitute negligence as a matter of law."

Specifically, in support of the above, appellants urge that the center line was a place of safety, and we are cited to *Moldenhauer* v. *Smith*, 311 Mich 265, 270, wherein it was held, as quoted by appellants: "Plaintiff was guilty of contributory negligence, as a matter of law, in leaving a place of safety and proceeding  *  *  *  in the path of a rapidly-approaching automobile."

Is the center of the street a place of safety? Assuming it is such, is it negligent for a pedestrian to leave this haven and make for the farther side of the street? The questions presented bring squarely before us a consideration of the relative rights and duties between a motorist and a pedestrian caught in the middle when a traffic signal changes. We are not dealing with the pedestrian who steps off the

sidewalk under conditions that prove immediately to be perilous. That situation has its own unique problems. Here the pedestrian is committed to the journey when the light changes. If he stays where he is, he is exposed to danger. The center of the street is no sanctuary. If he tries to return, his way may be blocked. He exposes himself, moreover, to the peculiar hazards attending any reverse movement. Can we say, as a matter of law, that the pedestrian who holds his course is proved guilty of negligence if he fails to make it, if he is struck down while still in the street?

At the common law, unaided by statute or ordinance, it was said that the rights of pedestrians and motorists at crossings were equal and that neither had a superior right over the other. *Molda* v. *Clark*, 236 Mich 277. This being the case, in order to avoid being negligent it was the duty of each to exercise due care, *i.e.*, the care of a reasonably prudent person under the same or similar circumstances. The fact that the *standard* of care for each was the same does not mean, however, that the *amount* of care necessary to be exercised by each was the same. The absolute measures of care exercised by each party, the physical requirements of caution, are vastly different because of their differing capacities to injure. The amount of care exercised in attaining the due-care standard varies in proportion to the apparent risk. Here the parties are in positions of gross inequality. The motorist has under his control an instrumentality capable of inflicting great bodily harm upon relatively slight impact, and at slight risk to himself (*Patterson* v. *Wagner*, 204 Mich 593, 600). These are "circumstances" requiring the driver to exercise an extreme amount of care, for it is axiomatic that care must be exercised in direct proportion to one's capacity to injure. A messenger carrying a lead pencil through a crowded room is

subject to the same standard of care as one carrying an open razor; he who levels a loaded machine gun at a crowd conforms to precisely the same standard as one who levels a loaded water pistol. The standard for all is the same, the standard of due care under the circumstances. Yet just as there is an infinite variety of circumstances, so there is an infinite variety in the actual amount of care to be exercised by each lest he be held negligent.

This aspect of the law of negligence has not received the emphasis demanded, by its significance, in the motorist-pedestrian cases, and this is one reason why the common-law rule of reciprocal rights and duties has not sufficed to protect pedestrians from the hazards of ever-increasing automobile traffic. Despite occasional protests by jurists that a pedestrian crossing a street is not required to "continuously swivel his head from side to side" (*Campbell* v. *Balis*, 380 Pa 245, 248 [110 A2d 254] ), that " 'pedestrians have not yet become outlaws at street crossings' " (Wiest, J., quoting in *Petersen* v. *Lundin*, 236 Mich 590), the toll continues to mount. We look with horror upon ancient rites involving human sacrifice. We take pride in our progression from the sacrifice of the first-born son, to the lamb, then to the abolition of sacrifice entirely, yet historians of the future may well note that it was a common sight in our cities in this era to observe the citizens of the community running for their lives, literally, if caught in the center of the street by a changing traffic light. Those not so nimble as others perish in greater numbers. The decedent whose case is before us was 76 years of age. Whether he was able to run or not the record does not disclose. When asked if the decedent began to run when the traffic started moving, as he was leaving the center of the road, a witness replied that "the first couple of steps

he walked." The next question: "Did he run after that? *A.* He speeded it up." Not, certainly, enough.

The contest between motorist and pedestrian can have but one outcome and the toll of dead and injured in this unequal contest has become a national scandal. The "equal and reciprocal rights" doctrine of the common law, as it has been interpreted by the courts, obviously has not served to protect pedestrians. The legislative bodies have sought other solutions, imposing even more stringent duties upon motorists, these being, in the words of the Maryland court (*Webb-Pepploe* v. *Cooper,* 159 Md 426, 430, 431 [151 A 235] ) "legislative recognition of the danger of vehicular traffic to pedestrians in passing across the streets of cities and towns, and an effort to diminish the number of injuries and fatalities from this source by giving the pedestrian the right-of-way at street crossings in towns and cities." One such ordinance we have before us in the case at bar. The city of Saginaw has provided as follows with respect to pedestrians and vehicles at crosswalks in that city:

"Pedestrians' right-of-way at crosswalks
"169.1.  Where traffic control signals are not in place, or in operation, the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be, to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this article.
"169.2.  Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."

Ordinances similar to and exactly like that quoted have been before our Court in the past. The case of *Moore* v. *Noorthoek,* 280 Mich 431, involved a plain-

tiff pedestrian injured on a crosswalk in the city of Grand Rapids. She is described as "a woman of mature years" who had (p 437) "made a dash to get away from the car but was hit." An ordinance in effect in the city of Grand Rapids at the time stated as follows (p 437):

" 'The operator of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic signals.' "

Verdict and judgment having been for plaintiff below, defendants appealed to this Court, alleging (in part) error in the court's instructions as follows (p 435):

" 'If the defendant failed to bring his car under such control on approaching this intersection in question, that is, bring it under control where he could bring it to a stop within the assured clear distance ahead, if he failed to do that upon approaching this intersection, then that would constitute negligence on the part of this defendant. As I have already stated to you, it is the duty of one operating an automobile to operate it within the assured clear distance ahead at such speed that they can stop it within the assured clear distance ahead, so that they may avoid striking objects or persons upon the highway. * * *

" 'I will say to you further, as a matter of law, that this plaintiff in crossing this intersection, after she had entered the intersection and proceeded across the center of the intersection, and was approaching the west half and about to cross the west half, that it was the duty of this defendant, traveling from the north and on the westerly side of this highway, to yield the right-of-way to this pedestrian; in other words, it was his duty to see her as she was crossing in the manner in which she claims—understand he

claims she was not crossing there—but if she was crossing as she claims, it was his duty to see her and to yield the right-of-way to her and avoid striking and running into her.' "

This Court, speaking through Mr. Justice SHARPE, held that (p 438):

"She had a right to assume that defendant would drive the car in compliance with the city ordinance which gave plaintiff the right-of-way at such crossings and whether plaintiff exercised reasonable care under the circumstances was a question of fact for the jury."

And, also, that (pp 439, 440):

"In the case at bar the defendant admits that there was nothing to obstruct his view of the crossing and if plaintiff was crossing from east to west as she claims, then it was defendant's duty to see what was plainly to be seen and to yield to her the right-of-way in conformity with the city ordinance relating thereto, moreover, under such circumstances it was the duty of defendant to avoid running into and striking plaintiff. We find no error in the charge of the trial court as applied to the facts in this case."

The above charge properly stated the law of this jurisdiction upon its facts. With this case, however, must be compared the later case of *Moldenhauer* v. *Smith,* 311 Mich 265. That case, like this, involved a pedestrian in the city of Saginaw. She was using a crosswalk at the intersection of East Genesee avenue and Park street. It was another of these jump and sprint cases. The opinion states (p 266) that, "As she was about to reach the northerly curb she observed the Smith car bearing down on her, attempted to run and jump out of the way, but was struck." The same ordinance was in effect as we have before us in the case at bar. A jury verdict having been returned to defendant, plaintiff

appealed, claiming, in part, error in instructions to the jury respecting the relationship between the ordinance and the common-law doctrine of contributory negligence. The trial court had charged, in part, that (p 268):

" 'If you find that plaintiff took a chance in crossing in front of defendant's vehicle and was injured because of it, the plaintiff would be guilty of contributory negligence and your verdict should be of no cause of action in favor of the defendant.' "

We continue from our opinion (pp 268, 269):

"It is claimed that this portion of the charge made it impossible for plaintiff to recover under any circumstances, in that:

" 'People take chances every day in practically everything they do and the crossing of a street in a downtown business district having heavy traffic is always taking a chance in the common usage of that word.'           .

"It is further urged that this portion of the charge held, in effect, that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff claims support for her argument in this respect by the trial judge's statement in denying a motion for new trial, where, in recounting the facts pertaining to plaintiff's conduct, the trial judge said:

" 'The court was not given the opportunity to determine the motion for directed verdict by defendant upon the question of contributory negligence, and the court feels that, under the decisions of our Supreme Court, from the facts in this case, where plaintiff continually watched the automobile approaching a distance of 92 feet, while she traveled a distance of 26 feet, the car traveling at the rate of 30 miles an hour, that the car and she reached the same point at the same time; and that, if plaintiff had been watching the automobile, as she definitely insists in her own testimony that she did, then she certainly should have seen her danger and avoided

it. Such conduct on the part of plaintiff is so clearly careless and in disregard of ordinary watchfulness· in traffic that this court is convinced that she is guilty of contributory negligence, as a matter of law.' "

Our court concluded as follows (p 270):

"In the instant case the conclusion is inescapable that plaintiff was guilty of contributory negligence, as a matter of law, in leaving a place of safety and proceeding into a zone of danger in the path of a rapidly-approaching automobile. Since the trial judge would have been fully justified in directing a verdict for defendant as a matter of law, the claimed errors in the charge become inconsequential."

The above language stems from an erroneous interpretation of the ordinance and it is expressly disapproved. If the ordinance before us is to have any meaning at all it entitles the pedestrian to positive preferential treatment at crosswalks. The care required of the motorist, under the terms of the ordinance, goes beyond the common-law rule of ordinary care, for even without the ordinance the pedestrian is entitled to that. If, in the *Moldenhauer Case,* as the trial court stated, the plaintiff watched the automobile approaching for 92 feet, its driver also watched (or should have watched) her for the same 92 feet. Knowing she was in the crosswalk the ordinance required him to stop, "if need be," so as to yield the right-of-way to her. Yet he collided with her within the intersection and we said that, upon these facts, she could be held contributorily negligent as a matter of law. Why? Was not the driver under a positive mandate to stop, if necessary, before entering the intersection while she was there? Was she not entitled to rely upon his obedience to the law? Does such a holding give a pedestrian the right-of-way demanded by the ordinance? We say not.

We do not sit to render nugatory the efforts of our people to protect their lives and limbs. The ordinance places upon the motorist certain affirmative duties: He must approach a crosswalk at such moderate speed as to be able to yield the right-of-way to a pedestrian crossing therein, and be able to bring his car to a complete stop, if necessary, to accord the pedestrian his right-of-way. This is not a mere "technical right-of-way" as the successful defendant in the *Moldenhauer Case, supra,* urged, which language (along with "this so-called right-of-way") the *Moldenhauer* trial court employed in its charge to the jury. On the contrary, these are mandatory requirements, designed to abate the ever-mounting slaughter and we shall so interpret them. It is conceivable, of course, that under extreme circumstances a pedestrian on a crosswalk even under this ordinance might be guilty of contributory negligence. Knowing something of the vagaries of human conduct we are not prepared to say that anything is impossible. Thus a pedestrian may court disaster under the influence of strong emotion, natural, or artificially induced. But, in its very nature, such a situation would have to be most unusual. Speaking in general and normal terms it ill becomes a motorist who has been forbidden to occupy the pedestrian's space at the instant of collision to turn upon the injured pedestrian with the reproach, "It was your negligence that caused this." If the motorist had obeyed the ordinance he would never have reached the crosswalk in the first place, would have had no opportunity to strike, and then to scold, his victim (*cf., Bailey* v. *Geddes,* [1938] 1 KB 156). Why? Because he was required to stop, if necessary, in order to yield the right-of-way.

Under the mandate of the ordinance now before us it is clear that decedent Bartlett was not guilty of contributory negligence as a matter of law. More-

over, entirely apart from statute or ordinance, we are impelled to observe that the testimony, viewed in the light most favorable to plaintiff, does not justify a holding that the decedent was guilty of contributory negligence as a matter of law. Appellants argue to us certain allegations of fact, the accuracy of which, challenged by appellee, (*i.e.,* decedent attempted at one time to regain the north curb, that he was hidden from view before crossing in front of the unidentified car) was settled by the jury's verdict. Under the favorable view it appears that (1) before the decedent left the curb he waited for 2 cars to pass and looked both ways; (2) he walked across in a straight line and when the light a block away changed he was in the middle of the street; (3) after the light change he continued to go south, turning his head to his right, or west, obviously deciding that it was safe to proceed. At this point he had the right to assume that oncoming automobiles would approach at a lawful rate of speed. (The defendant driver before us admitted that he was exceeding the speed limit.) (4) After decedent left the center line "he walked pretty fast," apparently aware of the oncoming traffic. He was then struck and killed. We cannot say there was contributory negligence as a matter of law in this situation.

Affirmed. Costs to appellee.

BLACK, EDWARDS, and VOELKER, JJ., concurred with SMITH, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in the result.

KAVANAGH, J., took no part in the decision of this case.