ORTEGA v. VEENSTRA.

1. Automobiles—Statutes—Safe Operation—Audible Warning—Instructions.

   Statutory requirement that a driver give an audible warning with his horn where reasonably necessary to insure safe operation of his automobile does not impose a duty upon a driver to sound his horn when a child 7 years and 7 months of age runs from a hidden position from behind a parked truck near an intersection into the path of driver's automobile, nor is a specific jury instruction concerning the motorist's duty to sound his horn proper where the court gave an instruction on the standard of ordinary care under the circumstances which adequately described the driver's duty (CLS 1961, § 257.706).

2. Same—Negligence—Pedestrian—Driver—Instructions.

   A trial court need not instruct the jury on the relative amounts of care to be exercised by a pedestrian and a driver where the pedestrian placed himself in peril by suddenly running out into the street and into the path of driver's automobile, an instruction for the standard of ordinary care under the circumstances being the proper test for both the pedestrian and the driver.

3. Negligence—Contributory Negligence—Instructions—Proximate Cause.

   Reference to contributory negligence in instructions, which amply inform the jury of the proximate cause element of contributory negligence without mentioning that proximate cause must

References for Points in Headnotes

[1, 4] 7 Am Jur 2d, Automobiles and Highway Traffic § 429 et seq.
[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 1024.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic § 1023.
[5] 58 Am Jur, Witnesses § 800.

be a substantial factor in plaintiff's injury, is proper as no attempt should be made at subtle distinctions in the degree of contributory negligence.

4. AUTOMOBILES—INSTRUCTIONS—REASONABLE STATEMENT OF·LAW.

Instructions to jury in action for injuries to boy 7 years and 7 months of age when struck by defendants' car *held*, without reversible error, where the charge· is a reasonably organized statement of the law in the judge's own words. ·

5. WITNESSES—IMPEACHMENT—IMMATERIAL ISSUE—EXCLUSION OF DEPOSITION.

A witness may not be impeached on an immaterial issue; thus, plaintiff's claim that the court erred in refusing to .allow introduction into evidence of a portion of a deposition to show a witness used the word *northeast* instead of *northwest* in describing direction from which plaintiff suddenly ran onto the street and into the path of driver's automobile was an immaterial issue where the fact as to how plaintiff attempted to cross the street had not been questioned by anyone.

Appeal from Court of Appeals, Division 3,·Lesinski, C. J., and Burns and Holbrook, JJ., affirming in part and reversing and remanding in part Kent, Vander Wal (John H.), J.  Submitted April 8, 1969. (Calendar No. 8, Docket No. 52,001.)  Decided August 4, 1969.

10 Mich App 190, affirmed as to defendants Veenstra.

Complaint by Leonard Ortega, individually and as next friend of Robert M. Ortega, a minor,· to recover for injuries suffered by Robert M. Ortega against Arend Lenderink, Donald Veenstra, and Dona Veenstra.  Verdict and judgment of no cause of action as to defendants Veenstra.  Plaintiffs appealed to the Court of Appeals.  Affirmed as to defendants Veenstra.  Reversed as to defendant Lenderink.  Plaintiffs appeal.  Affirmed as to de-

fendants Veenstra. See 382 Mich 218, as to defendant Lenderink.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley,* for plaintiff.

*Phelps, Linsey, Strain & Worsfold,* for defendants Veenstra.

KELLY, J. Plaintiff appealed a jury verdict of no cause of action. The Court of Appeals affirmed[1] as to defendants Veenstra and reversed the trial court and granted a new trial against defendant Lenderink.

This opinion is confined to plaintiff's appeal to this Court[2] from the affirmance of the verdict and judgment of no cause of action as to defendants Veenstra.

On August 28, 1962, at about 11 a.m., as defendant Dona Veenstra was driving south on Clancy avenue, in the city of Grand Rapids, Robert Ortega (who was 7 years and 7 months old at the time of the accident) attempted to cross Clancy avenue from the west to the east side, at or near its intersection with Fairbanks street, in a primarily residential area.

Clancy is a through street, having the right-of-way over the intersecting street (Fairbanks) by virtue of a "yield right of way" sign located at the intersection.

The record sustains defendants' claim that as the Veenstra automobile neared the intersection, Robert Ortega skipped or ran from a hidden position in front of the parked Lenderink truck into the path of the Veenstra automobile and was struck instantly

---

[1] *Ortega* v. *Lenderink* (1968), 10 Mich App 190.
[2] Leave to appeal granted, 381 Mich 755.

after taking not more than three steps onto the street from his concealed position.

Plaintiff requests that the Court of Appeals' decision be reversed and the case remanded for new trial because of the trial court's failure to properly instruct the jury and the court's ruling excluding a portion of a deposition.

In regard to the claimed instructional errors, plaintiff claims he was entitled to: (1) an instruction that defendant had a duty to give audible warning with her horn as she approached the intersection; (2) an instruction distinguishing between the relative amount of care required of drivers and pedestrians; (3) and an instruction that any contributory negligence by Robert Ortega must not only be a proximate cause of the car-pedestrian collision, but a "substantial factor" in bringing it about.

## 1. *Duty to Blow Horn.*

CLS 1961, § 257.706 (Stat Ann 1968 Rev § 9.2406) provides:

"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

No case has been cited, or called to our attention, requiring a driver to sound his horn upon approaching an intersection.

The record failed to disclose testimony sustaining plaintiff's contention that a reasonably prudent driver would deem it "reasonably necessary to insure safe operation [to] give audible warning with his horn."

We agree with the following statement made by the Court of Appeals in disposing of appellant's claim in this regard (p 195):

"Plaintiffs argue that the jury should have been instructed on defendant Veenstra's duty under statute to sound her horn when reasonably necessary to insure the safe operation of her vehicle. The subject was adequately covered in the court's instruction concerning the standard of ordinary care under the circumstances. This court is aware of no case *under these particular facts* which establishes a duty to sound one's horn or which would require a specific jury instruction on a motorist's duty to sound his horn in addition to the general instruction on ordinary care."

## 2. *Duty of Motorists and Pedestrians to Exercise Care.*

Plaintiff contends that the trial court erred in refusing to instruct the jury that:

" 'The motorist has under his control an instrumentality capable of inflicting great bodily harm upon relatively slight impact, and at slight risk to himself. These are "circumstances" *requiring the driver to exercise an extreme amount of care,* for it is axiomatic that care must be exercised in direct proportion to one's capacity to injure.' " (Emphasis ours.)

claiming that under our holding in *Bartlett* v. *Melzo* (1958), 351 Mich 177, 181, he was entitled to such an instruction.

It is plaintiff's position that while the "standard" of care required of a pedestrian and driver may be equal, the "amount" of care is not equal.

Plaintiff raised this same question before the Court of Appeals, and, in disagreeing with plaintiff, the Court stated that the trial court properly instructed in regard to the care that both plaintiff and defendant should exercise, and that the *Bartlett* v. *Melzo Case* was "not in point."

The question presented in *Bartlett* v. *Melzo* was not one of proper jury instruction.

We agree with the Court of Appeals. In the *Bartlett Case* we were not dealing with facts as exist in the present case, where a pedestrian placed himself in peril by suddenly running out into the street, as is evidenced by the following from *Bartlett* (pp 180, 181):

"Is the center of the street a place of safety? Assuming it is such, is it negligent for a pedestrian to leave this haven and make for the farther side of the street? The questions presented bring squarely before us a consideration of the relative rights and duties between a motorist and a pedestrian caught in the middle when a traffic signal changes. We are not dealing with the pedestrian who steps off the sidewalk under conditions that prove immediately to be perilous. That situation has its own unique problems."

### 3. *Contributory Negligence.*

Plaintiff claims that the court failed to instruct that any negligence attributable to Robert Ortega must not only be "proximate cause" but, also, a "substantial factor," and in support of such contention cites *Mack* v. *Precast Industries, Inc.* (1963), 369 Mich 439.

In the *Mack Case,* this Court, in reversing because of the use 16 times of the term "however slight," did not hold that the negligence must be a "substantial factor," but to the contrary stated (p 450):

"The decided weight of authority tends to view that contributory negligence is not susceptible of division into degrees or percentages, and that an instruction importing such division or inviting a comparison of the relative amount of negligence

attributable to the parties to the action is erroneous."

We agree with the Court of Appeals that (p 196):

"The trial court in its instructions repeatedly referred to contributory negligence and to the possibility of negligence on the part of plaintiff which might have contributed to his own injury. The instructions taken as a whole amply informed the jury on the proximate cause element of contributory negligence. * * * Michigan does not attempt subtle distinctions in the degree of contributory negligence; this is the true import of the *Mack Case.*"

We find that the jury was properly instructed and met the test that: "The judge's charge should be a reasonably organized statement of the law in the judge's own words." *Knickerbocker* v. *Samson* (1961), 364 Mich 439, 449.

### 4. *Deposition Exclusion.*

In concluding that the trial court did not err in excluding a portion of the deposition of Patrolman Jack Billingsley, we first quote from plaintiff's brief as follows:

"Witness Nancy Dahlke, called by defendants Veenstra, is the only person who purportedly observed the actions of Robert Ortega immediately prior to this collision. In the course of trial, Mrs. Dahlke testified that Bobby was crossing Clancy street from the northwest to the northeast corner and that he was running across the street at the time he was struck.

"When interviewed by Patrolman Jack Billingsley of the Grand Rapids police department immediately following the collision on August 28, 1962, Mrs. Dahlke stated that Bobby was crossing from the *northeast* to the *northwest* corner of the Clancy-

Fairbanks intersection when he was struck.   \*   \*   \*
In cross-examination of witness Dahlke, she was asked whether she recalled having told Patrolman Billingsley that Bobby was crossing Clancy in an east-west direction at the time he was struck:

  " '*Q.* Do you recall talking with the police officer at the scene of this occurrence?

  " '*A.* Yes, I do.

  " '*Q.* Do you recall whether or not you told the police officer that Robert was going from the northeast corner to the northwest corner when he was struck?

  " '*A.* I don't remember that, I may have, but I don't remember that.

  " '*Q.* You may have told him that?

  " '*A.* It is possible I could have gotten my directions mixed up.' "

Plaintiff claims the court erred in refusing to allow the introduction of that portion of the Billingsley deposition showing that Nancy Dahlke used the word "northeast" instead of the word "northwest."

The fact as to how Robert Ortega attempted to cross Clancy avenue was not questioned by anyone, including plaintiff-appellant.

We have repeatedly held that a witness may not be impeached on an immaterial issue.

Affirmed. Costs to appellees.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.